IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GARY D. MERRYMAN, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 3:12-CV-2156-M(BH) |
| § | |
| JPMORGAN CHASE & CO., et al., § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the standing order of reference dated July 17, 2012, this case has been referred for pretrial management. Before the Court for recommendation is *Plaintiffs' Motion and Brief in Support of Motion to Remand*, filed August 6, 2012 (doc. 9). Based on the relevant filings, evidence, and applicable law, the motion should be **DENIED**.

**I. BACKGROUND**

This case involves foreclosure of real property located at 518 Basswood Trail, Garland, Texas 75040 (the Property). On May 31, 2012, Gary and Marquetta Merryman (Plaintiffs) sued Deutsche Bank National Trust Co. (Deutsche Bank), as trustee for Long Beach Mortgage Loan Trust 2006-5, JP Morgan Chase & Co. (JPMC), and JPMC's employee, Michael Meave (the Employee) (collectively, Defendants) in the 14th Judicial District Court of Dallas County, Texas. Plaintiffs alleged violations under the Texas Property Code and the Texas Deceptive Trade Practices Act (DTPA) and also asserted an unjust enrichment claim. (doc. 1-3 at 6-8.) With respect to the Property, Plaintiffs sought to reverse Deutsche Bank's alleged "wrongful foreclosure," to enjoin its further sale or transfer, and to regain its title and possession. (*Id.* at 8-11.)

Defendants removed the action to this court on July 6, 2012, claiming diversity jurisdiction

under 28 U.S.C. § 1332. (doc. 1 at 2-4.) Defendants alleged that (1) JPMC was a Delaware corporation with its main office in New York and was therefore a citizen of Delaware and New York; (2) Deutsche Bank was a federally-chartered, non-depository trust company with its main office in California and was therefore a California citizen; and (3) Plaintiffs were residents and citizens of Texas. (*Id.* at 4.) While they essentially conceded that the Employee was a Texas citizen, and therefore a non-diverse in-state defendant, they contended that his Texas citizenship should be disregarded for removal purposes because he had been improperly joined. (*Id.* at 4-8.)

On August 6, 2012, Plaintiffs moved to remand the case to the state court for lack of subject matter jurisdiction. (*See* doc. 9.) Specifically, they argue that diversity jurisdiction does not exist because the Employee was properly joined and the amount-in-controversy requirement has not been met. (*Id.* at 3-10.)

## II.  REMOVAL JURISDICTION

Any civil action brought in state court may be removed to federal court if the district court has original jurisdiction over that action. 28 U.S.C. § 1441(a). A district court's original jurisdiction is of two types: federal question jurisdiction and diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction exists in all civil actions arising under the Constitution, laws, or treaties of the United States. *Id.* § 1331. Diversity jurisdiction exists in all civil actions where the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is diversity of citizenship. *Id.* § 1332(a).

To determine whether removal jurisdiction exists, the court must "consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44

F.3d 256, 264 (5th Cir. 1995)). Additionally, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.* If there is "any doubt about the propriety of removal, [it] must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

### A. <u>Diversity of Citizenship</u>

Because no federal question is presented in this case, removal was proper only if the Defendants have met their burden of showing that diversity of citizenship exists. *See Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 604 (N.D. Tex. 2009); *see also Carrillo v. JP Morgan Chase Bank, N.A.*, No. EP-12-CV-222-KC, 2012 WL 3276971, at *3 (W.D. Tex. Aug. 9, 2012)

Plaintiffs argue that diversity is not complete because the Employee is also a citizen of Texas and was properly joined. (*See* doc. 9 at 3-9.) While they concede that their claims against him under the Texas Property Code and the Texas Deceptive Trade Practices Act (DTPA) are "likely invalid," they argue that they have asserted a valid claim against him under the Texas Debt Collection Practices Act (TDCPA) §§ 392.304(a)(14) and 392.304(a)(19). (*See id.* at 5-9.)

#### 1. *Improper Joinder*

"The starting point for analyzing claims of improper joinder must be the statutes authorizing removal to federal court of cases filed in state court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc); *Adams v. Chase Bank*, No. 3:11-CV-3085-M, 2012 WL 2122175, at *2 (N.D. Tex. May 11, 2012), *report and recommendation adopted*, 2012 WL 2130907 (N.D. Tex. June 12, 2012). The federal removal statute allows removal of any civil action brought in state court over which the federal district courts have original jurisdiction. 28 U.S.C. § 1441(a). An action removable on diversity jurisdiction may not be removed, however, if "any of the parties

in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

The improper joinder doctrine is a narrow exception to the complete diversity rule. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The doctrine ensures "that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity." *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (citing *Salazar v. Allstate Tex. Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006)). In other words, it allows a court to disregard the citizenship of an improperly joined defendant for purposes of determining diversity. *See Smallwood*, 385 F.3d at 572. To show improper joinder, the removing defendant bears the heavy burden of showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573-74 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

When the citizenship of the non-diverse defendant is undisputed, the inquiry focuses on the plaintiff's inability to establish a cause of action against him in state court. *Adams*, 2012 WL 2122175, at *2. To prove improper joinder based on the plaintiff's inability to establish a cause of action against the non-diverse defendant, a removing defendant must demonstrate that "there is no possibility of recovery by the plaintiff against [the] in-state defendant." *Smallwood*, 385 F.3d at 573. That is, he must show that there is "no reasonable basis" for predicting that the plaintiff might be able to recover against the in-state defendant. *Id*.

There are two proper means for predicting whether a plaintiff has a reasonable basis for recovery under state law. *Id.* "The court may conduct a Rule 12(b)(6)-type analysis, looking

4

initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (citation omitted). The court does not predict "whether the plaintiff will certainly or even probably prevail on the merits, but look[s] only for a possibility that he may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citation omitted). The court must take as true the plaintiff's well-pleaded allegations of fact and resolve any contested issues of fact or ambiguities in state law in his favor. *Cantor*, 641 F. Supp. 2d at 608 (citations omitted). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573.

Where, however, "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Although a matter for the court's discretion, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. The court may not move "beyond jurisdiction and into a resolution of the merits." *Id.* at 574.

Here, Defendants argue that there is "no reasonable basis" to predict that Plaintiffs can recover from the Employee under the TDCPA because their petition[1] pleads no facts showing that his alleged representations were fraudulent, deceptive, or misleading, or that he, as an individual, acted as a "debt collector" as defined by the Act. (doc. 12 at 4-6.) Plaintiffs' petition is ambiguous as to the identity of the "Defendant" that allegedly violated the TDCPA. (*See* doc. 1-3 at 6.) It elsewhere defines or specifically refers to the parties as "Defendant Deutsche," "Defendant Chase

---

[1] Plaintiffs acknowledge that remand of this case "turns on the sufficiency of the allegations set forth in [their] Original Petition." (*See* doc. 9 at 6.); *see also Manguno*, 276 F.3d at 723 (holding that to determine whether federal jurisdiction exists, the court must consider the claims in the state court petition as they existed at the time of removal).

Bank," "Defendant Chase," "Chase's officer, Michael Meave," and "Chase employee, Michael Meave." (*See id*. at 2, 6-7.)

Even assuming that the "Defendant" refers to the Employee, Plaintiffs have failed to state a valid TDCPA claim against him. Plaintiffs asserted their TDCPA claim under the "tie-in" section of the DTPA. (*See id.*) The DTPA "tie-in" statute grants a private right of action under the DTPA to a claimant seeking to recover under the TDCPA. *Miller v. BAC Home Loans Servicing, LP*, No. 6:11CV22, 2012 WL 1206510, at *5 (E.D. Tex. Mar. 23, 2012) (citing to Tex. Bus. & Com. Code § 17.50(h) & Tex. Fin. Code § 392.404), *report and recommendation adopted*, 2012 WL 1205797 (E.D. Tex. Apr. 11, 2012). To succeed under such a tie-in claim, however, "[the] claimant must show that he is a 'consumer' as defined in the DTPA." *Id.* (citations omitted). The DTPA defines a consumer, in relevant part, as an individual "who seeks or acquires by purchase or lease, any goods or services." *Smallwood v. Bank of Am.*, No. 3:11-CV-1283-D, 2011 WL 4544041, at *3 (N.D. Tex. Sept. 30, 2011) (citing Tex. Bus. & Com. Code § 17.45(4)), *report and recommendation adopted in part*, *rejected in part*, 2011 WL 4595219 (N.D. Tex. Oct. 3, 2011). To qualify as a consumer, a plaintiff must satisfy two requirements: (1) he must have sought or acquired goods or services by purchase or lease; and (2) the goods or services purchased or leased must form the basis of the complaint." *Id.* (citations omitted). Notably, because "the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the DTPA." *Hurd v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1752-M, 2012 WL 1106932, at *15 (N.D. Tex. Mar. 29, 2012).

Although in some cases a borrower may be a consumer if he meets the two requirements, here Plaintiffs haven not pled that they are consumers or that the foreclosed property is the basis of

6

their DTPA and TDCPA "tie-in" claim. *See Smallwood*, 2011 WL 4544041, at *3; *see also Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir.1992) (distinguishing cases where the complaint is with regard to the tangible property as opposed to a loan, the court held that a plaintiff who borrows money, even if incidental to a completed mortgage loan, is not a consumer for purposes of the DTPA); *Miller*, 2012 WL 1206510, at *5 (to same effect).

In their motion to remand, Plaintiffs attempt to assert a stand-alone TDCPA claim against the Employee under § 392.304(a)(14) and § 392.304(a)(19). (*See* doc. 9 at 7-9.) They essentially argue that the Employee violated these sections by stating that: (1) there were no programs that were helpful and that there was nothing he could do; (2) they did not qualify for Home Affordable Mortgage Program (HAMP); and (3) Chase had no programs to help them in their situation. (*Id.* at 8.) They argue that as a result of his conduct, "they were robbed of their chance at a modification." (*Id.*)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Smallwood*, 2011 WL 4544041, at *3 (citations omitted). The TDCPA defines a "debt collector" as "'a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts.'" *Smallwood*, 2011 WL 4544041, at *3 (citing Tex. Fin. Code § 392.001(6)). It defines a "consumer" as an individual who has a consumer debt, that is, "'an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or an alleged transaction.'" *Id.* (citing Tex. Fin. Code §§ 392.001(1) & (2)). It defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer

7

debts that are due or alleged to be due a creditor." Tex. Fin. Code Ann. § 392.001(5) (West 2006).

During debt collection or in obtaining information concerning a consumer, § 392.304(a)(14) of the TDCPA prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that employs ... representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business." *Id.* § 392.304(a)(14). Subsection 392.304(a)(19) "operates effectively as a 'catch-all' provision, prohibiting a debt collector from 'using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.'" *Sanghera v. Wells Fargo Bank*, *N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *8 (N.D. Tex. Feb. 21, 2012) (citing Tex. Fin. Code § 392.304(a)(19)). For a party's statement to constitute a misrepresentation under the TDCPA, that party "must have made a false or misleading assertion." *Id.* at *9.

Here, Plaintiffs have failed to allege facts showing that the Employee, as an individual, acted as a debt collector within the meaning of the TDCPA when he made the alleged representations. While they allege that he was a debt collector because he "took [their] information" and was "an officer of [JMPC] who, in its automated recording, affirmatively states its status as a debt collector," they have pled no factual allegations showing that any of his communications with Plaintiffs constituted "an action, conduct, or practice in collecting, or in soliciting for collection" on their mortgage. According to their own petition, it was Plaintiffs who more than once "contacted [the Employee] ... to ask for help" with modifying their mortgage. (*See, e.g.*, doc. 1-3 at 2, 15.) Because Plaintiffs have failed to allege facts showing that the Employee engaged in debt collection as defined by the TDCPA, there is no reasonable basis to predict they might be able to recover against him under the Act. *See Gomez v. Wells Fargo Bank, N.A.*, No. 310-CV-0381-B, 2010 WL

2900351, at *4 (N.D. Tex. July 21, 2010) (holding that "[t]o prevail under the [TDCPA] 'the claimant must prove that the defendant was a debt collector'") (citing *Catherman v. First State Bank of Smithville, Tex.*, 796 S.W.2d 299, 302 (Tex. App.—Austin 1990, no writ)). Accordingly, under a Rule 12(b)(6)-type analysis, Defendants have met their heavy burden to show there is no reasonable basis to predict Plaintiffs might be able to recover against the Employee under the TDCPA.

### *2. The Common Defense Rule*

Plaintiffs allege that the improper joinder rule does not apply in this case because of the "common defense" rule. (doc. 9 at 3-5.)

In the Fifth Circuit, if "a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit." *Smallwood*, 385 F.3d at 574; *see also Great W. Inn v. Certain Underwriters at Lloyds of London*, No. CIV.A. H-11-320, 2011 WL 1157620, at *4 (S.D. Tex. Mar. 24, 2011) (citing to *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) & *Smallwood*, 385 F.3d at 574). In such a case, the removing defendant has failed to show improper joinder and remand is therefore required. *See McDonal*, 408 F.3d at 183. Nevertheless, the Fifth Circuit has made it clear that the "common defense" exception to the improper joinder rule "is implicated only when the common defense asserted would be equally dispositive as to *all* of the defendants." *Id.* at 184 (citing *Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638 (5th Cir. 2004) (per curiam) (emphasis in original). Accordingly, if the "court concludes that the common defense proffered would not dispose 'of every claim against every defendant,'" it "should continue to deny remand

and proceed with the proper disposition of the case." *Id.* (citations omitted).

Here, Plaintiffs concede that their claims against the Employee under the Texas Property Code and the DTPA are likely invalid. As previously discussed, they have failed to show they have a reasonable basis of recovery against the Employee under the TDCPA. Plaintiffs have asserted these three claims against Deutsche Bank and JPMC, and they also seek to recover from them under an unjust enrichment theory, arguing that "approximately $70,000 of equity would be permanently lost to *Defendant* Deutsche Bank and *its agent* [JPMC] due to the wrongful acts of Chase's officer, Michael Meave." (doc. 1-3 at 7) (emphasis added). Consequently, the common defense rule does not apply here because Plaintiffs' inability to state a valid claim against the Employee under the TDCPA does not necessarily dispose of all the claims against Deutsche Bank and JPMC under the Texas Property Code and the DTPA. *See Dorsey v. Tadlock*, No. 2:12CV17-B-A, 2012 WL 4467267, at * (N.D. Miss. Sept. 27, 2012) (holding that the common defense rule did not apply where the defense asserted by the non-diverse defendant had "no bearing" on the plaintiffs' ability to state valid claims against the diverse defendants).

Because Defendants have met their high burden to show that the Employee was improperly joined, his citizenship should be disregarded for purposes of removal jurisdiction. Accordingly, Plaintiffs' motion to remand on the ground of complete diversity should be denied.

**B.**     **Amount-in-Controversy**

Plaintiffs argue that the amount-in-controversy requirement is not met because Defendants have not provided sufficient evidence to "enable the Court to place a value on the interest [Plaintiffs] seek," and have therefore failed to show by a preponderance of the evidence that the value of that unspecified interest exceeds $75,000. (doc. 9 at 9-10.) Defendants respond that the amount in

controversy exceeds $75,000 because the interest at issue is the Plaintiffs' "collection of rights" to the Property and the Property's current appraised value is $182,960. (doc. 12 at 7.)

The amount-in-controversy threshold is a necessary element that must be met before a federal court properly exercises diversity jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). In motions to remand, the amount in controversy is determined from the plaintiff's perspective. *Burr v. JP Morgan Chase Bank, N.A.*, No. 4:11-CV-03519, 2012 WL 1016121, at *2 (S.D. Tex. Mar. 23, 2012). The defendant, as the removing party, bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). He may satisfy this burden by demonstrating that it is facially apparent from the plaintiff's petition that the claim likely exceeds $75,000.00, or by setting forth the facts in controversy that support a finding of the requisite amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

### 1. *The Object of the Litigation*

In actions where the plaintiff seeks injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Specifically, the "object of the litigation" is "the value of the right to be protected or the extent of the injury to be prevented." *McDonald v. Deutsche Bank Nat. Trust Co.*, No. 3:11-CV-2691-B, 2011 WL 6396628, at *2 (N.D. Tex. Dec. 20, 2011) (citing *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002)). If the injury sought to be prevented is the loss of title to property, then the property itself becomes the object of the litigation. *Burr*, 2012 WL 1016121, at *3. Accordingly, where the plaintiff puts the title to property in dispute, the value of the property is the proper measure of the amount in controversy. *Id.*; *accord*

*McDonald*, 2011 WL 6396628, at *2 ("When 'a right to property is called into question in its entirety, the value of the property controls the amount in controversy.'") (citing *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961)).

Here, while Plaintiffs do not place a dollar amount on the recovery they seek, their petition makes several allegations that put the title to the Property in dispute. In their request for equitable relief, they allege that "unless the foreclosure of their homestead is reversed as being wrongful, their home will be lost forever." (*See* doc. 1-3 at 7.) They seek a temporary restraining order to prevent Defendants from "selling the Property ... to any other person or company or entity." (*Id.* at 9.) They also seek a temporary injunction to enjoin Defendants from "directly or indirectly executing a sale of the Property." (*Id.* at 10.) Finally, they ask the state court to, "after trial on the merits ... order Defendants to convey the Property to [their] ownership." (*Id.* at 10-11.) Accordingly, Plaintiffs' attempt to enjoin any further sale of the Property and to regain title to it calls into question the right to the Property in its entirety and makes it the object of the litigation. *See Burr*, 2012 WL 1016121, at *3; *McDonald*, 2011 WL 6396628, at *2. The value of the Property is therefore the proper measure of the amount in controversy. *Burr*, 2012 WL 1016121, at *3.

### *2.     The Property's Value*

To prove the Property's value, Defendants attached Exhibit 1 to their response to Plaintiffs' motion to remand, which consists of an appraisal report by the Dallas Central Appraisal District (DCAD). (*See* doc. 12-2.) That report shows the market value of the Property at $182,960. (*Id.* at 1.) They also submitted an affidavit, sworn to by one of Defendants' attorneys, affirming that he accessed the DCAD website to obtain that report. (*See* doc. 12-1.) Plaintiffs have not objected to the admissibility of the DCAD report. Defendants have shown by a preponderance of the evidence

12

that the amount in controversy exceeds $75,000.

## III. CONCLUSION

Because Defendants have shown that the Employee was improperly joined and that the amount in controversy exceeds $75,000, they have met their burden to show that the court has subject matter jurisdiction based on diversity of citizenship. Plaintiffs' motion to remand and request for attorney's fees should be **DENIED**.

**SO RECOMMENDED** on this 12th day of October, 2012.

```
_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
```

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

```
_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
```