IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY D. MERRYMAN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-2156-M(BH) |
| | § | |
| JPMORGAN CHASE & CO., et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the standing order of reference dated July 17, 2012, this case has been referred

for pretrial management.  Before the Court for recommendation is *Defendants' Motion to Dismiss*

*Plaintiffs' Original Petition and Application for Temporary Restraining Order and Temporary*

*Injunction*, filed July 13, 2012 (doc. 4).  Based on the relevant filings and applicable law, the motion

should be **GRANTED.**

**I.  BACKGROUND**

This case involves foreclosure of real property located at 518 Basswood Trail, Garland,

Texas 75040 (the Property).  On May 31, 2012, Gary and Marquetta Merryman (Plaintiffs) sued

Deutsche Bank National Trust Co. (Deutsche Bank), as trustee for Long Beach Mortgage Loan Trust

2006-5, JP Morgan Chase & Co. (JPMC), and JPMC's employee, Michael Meave (JPMC's

Employee) (collectively, Defendants) in the 14th Judicial District Court of Dallas County, Texas.

In their verified state court petition, Plaintiffs appear to assert claims for wrongful

foreclosure, violation of the Texas Deceptive Trade Practices Act (DTPA), violation of the Texas

Debt Collection Practices Act (TDCPA), and unjust enrichment.  (doc. 1-3 at 7–9.)  They request

1

an accounting and "proof" of a "valid reason" why they were declined for a loan modification.  (*Id.* at 8.)  They also request attorney's fees and seek to reverse the foreclosure of the Property, enjoin its further sale or transfer, and regain its title and possession.  (*Id.* at 8–11.)

Plaintiffs allege that they acquired the Property on April 28, 2006, with a $50,000 down-payment and a mortgage to cover the remainder of the purchase price.  (*Id.* at 2–3.)  They made their payments "every month, on time, until October 2010, when, due to [unemployment]," they "could not continue to pay their mortgage."  (*Id.*)  They sought information about the Home Affordable Modification Program (HAMP) from JPMC's Employee.  (*Id.* at 3.)  Although they made their payments to and always dealt with JPMC, JMPC's Employee never informed them that JPMC was "merely a servicing agent, and not the mortgage owner."  (*Id.*)  He allegedly told them that only one of them qualified for HAMP, but did not tell them that JPMC "did not own the mortgage," or that they should "contact someone else," as he was "obligated to do if that were the case."  (*Id.*)  Instead of supplying them with a HAMP application or directing them to the right department, JPMC's Employee purportedly refused to help them and "misled them" by stating "that [JPMC] had no programs to help them in their situation."  (*Id.*)  They contend that JPMC's Employee's statement "was wholly false."  (*Id.*)

Plaintiffs allege that Deutsche Bank "was engaging in active avoidance of its obligations under the HAMP program agreements in order to maximize its profits from the equity in [their] home."  (*Id.*)  Defendants purportedly "anticipat[ed] a huge profit from the wrongful foreclosure of [Plaintiffs'] home."  (*Id.*)  They made no effort to review Plaintiffs' situation, "as required by the [JPMC] agreement with Deutsche Bank ... which provisions are required by Federal statute."  (*Id.* at 3–4.)  On February 7, 2012, JPMC purportedly "caused a foreclosure of the Property ... to

2

Deutsche Bank." (*Id.* at 4.)

Plaintiffs claim that Defendants "breached the implicit agreement" made by JPMC's Employee "to help [them] take some action to save [their] home from foreclosure." (*Id.* at 5.) After they spoke with JPMC's Employee, they "thought that they would hear from [JPMC] when it was ready to work out the loan." (*Id.* at 6.) Although they believed they met the HAMP qualifications, "including loss of job, medical hardship, [and] forced retirement," and "would have managed ... to pay the modified amount," they "were robbed of their chance at a modification" by JPMC's Employee and JPMC. (*Id.*)

According to Plaintiffs, Deutsche Bank "induced [them] to wait for further action by [JPMC]," but "unknown [*sic*] to [them], then proceeded to foreclose their home." (*Id.*) They state they can pay "a reasonable mortgage payment," and will "pay ... reliably in the future" if given the opportunity. (*Id.* at 6–7.)

On July 6, 2012, Defendants removed the action to this Court on the basis of diversity jurisdiction. (doc. 1.) A few days later, Defendants moved to dismiss Plaintiffs' complaint. (doc. 4.) Plaintiffs did not file a response. The motion is now ripe for recommendation.

## II. RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6) on grounds that they fail to state a claim upon which relief can be granted. (*See* docs. 4 and 5.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker*

*v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

## A. Texas Property Code/Wrongful Foreclosure

Defendants move to dismiss Plaintiffs' claim for violation of the Texas Property Code on

grounds that Plaintiffs have not alleged any violation that would support a cause of action. (doc. 5 at 3-4.) Defendants also contend that Plaintiffs have failed to state a claim for wrongful foreclosure because they have alleged no procedural defect in the foreclosure sale or a grossly inadequate selling price resulting from such defect. (*Id.* at 4-5.)

Plaintiffs' claim that Defendants "failed to give proper notice of foreclosure" is properly characterized as a wrongful foreclosure claim. *See Marsh v. Wells Fargo Bank,* 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011); *Mitchell v. Deutsche Bank & Trust Co.*, No. 3:10-CV-1812-BH, 2012 WL 1670168, at *2 (N.D. Tex. May 14, 2012). The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). To succeed, the plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1752-M, 2012 WL 1106932, at *15 (N.D. Tex. Mar. 29, 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the mortgagee either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. However, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling

price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Here, Plaintiffs' assert that the foreclosure notice[1] they received from "Defendant"[2] was defective because "its balances were not correct due to the [JPMC] error in not crediting all [their] payments." (doc. 1-3 at 7.) Even if taken as true, however, Plaintiffs' allegation could not plausibly entitle them to relief because they fail to allege any facts showing that the Property was sold for a grossly inadequate price. They also fail to allege a causal connection between the purportedly defective notice and any grossly inadequate selling price. Their wrongful foreclosure claim should therefore be dismissed for failure to state a claim. *See Anderson v. Nat'l City Mortg.*, No. 3:11-CV-1687-N, 2012 WL 612562, at *6 (N.D. Tex. Jan. 17, 2012) (dismissing wrongful foreclosure claim where the plaintiff alleged she received an improper notice of foreclosure but she failed to allege any facts establishing the other elements of the claim); *see also Pollett v. Aurora Loan Services*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) (affirming dismissal of wrongful foreclosure claim because the plaintiff "failed to allege ... a grossly inadequate selling price and a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price").

---

[1]  While Plaintiffs do not identify a specific provision of Texas Property Code, section 51.002 requires a lender to provide to the debtor notice of default and intent to accelerate, specify the action required to cure the default, and give the debtor an opportunity to cure the default within a minimum of 20 days. *Mitchell*, 2012 WL 1670168, at *2; *see also* Tex. Prop. Code § 51.002(d). If the lender invokes the power of sale under the deed of trust, it must also provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date designated for the sale. *See* Tex. Prop. Code § 51.002(b).

[2]  Plaintiffs' petition  is ambiguous as to the identity of the "Defendant." In some instances, it refers simply to "Defendant," and in others, it refers to the parties as "Defendant Deutsche," "Defendant Chase Bank," "Defendant Chase," "Chase's officer, Michael Meave," and  "Chase employee, Michael Meave." (*See id.* at 2, 6–7.)  Michael Meave, the Employee, was previously found to have been improperly joined (*see* docs. 14 and 15), and he is therefore subject to dismissal from this lawsuit as an improperly joined party. *See Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999); *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510 (5th Cir.2009) (affirming dismissal of improperly joined defendant).  Accordingly, the analysis proceeds on the assumption that "Defendant" refers to both Deutsche and JPMC, unless otherwise specified in the complaint.

**B.      Texas Deceptive Trade Practices Act**

Defendants next move to dismiss Plaintiffs' DTPA claim on the grounds that they are not "consumers" as defined by the Act.[3]  (doc. 5 at 5–6.)

The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1)).  The DTPA defines a "consumer" in relevant part, as "an individual ... who seeks or acquires by purchase or lease, any goods or services."  Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007).  To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint." *Hurd*, 2012 WL 1106932, at *15 (N.D. Tex. Mar. 29, 2012) (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).  Because the lending of money is not a good or service, a borrower whose sole objective is to get a loan is not a consumer under the DTPA. *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)).  However, a borrower may become a consumer if he seeks to acquire goods or services with the loan, and the goods or services form the basis of his DTPA complaint. *See id.* (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

Here, Plaintiffs have not alleged they are consumers.  (*See* doc. 1-3.)  To the extent that they base their claim on their attempt to obtain a loan modification, they fail to establish their consumer

---

[3]      Defendants also argue that even if Plaintiffs were consumers, they fail to state a valid claim because Defendants did not engage in any misrepresentations and did not "intend" to induce them into a transaction. (doc. 5 at 7.)  Because the consumer status issue is dispositive, it is not necessary to reach these arguments.

status.  "Although one who borrows money to buy a house can be a consumer under the DTPA because that person's objective is to buy a home, subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'goods or services' element of the DTPA." *Swim v. Bank of Am.*, No. 3:11-CV-1240-M, 2012 WL 170758, at * 6 (N.D. Tex. Jan. 20, 2012) (citation omitted).  According to their own complaint, Plaintiffs are not consumers because their objective was not to seek or acquire the Property with a new mortgage, but rather, to modify their existing mortgage. (*See* doc. 1-3 at 3.) Their DTPA claim should be dismissed with prejudice. *See Hurd*, 2012 WL 1106932, at *15.

C.     **Texas Debt Collection Practices Act**

Defendants point out that although Plaintiffs assert violations under §§ 392.303(a), 392.304(a), and 392.301(a)(8)[4] of the TDCPA, they "do not even assert what specific provisions" of §§ 392.303(a) and 392.304(a) "have been allegedly violated."  (doc. 5 at 7.)  They construe Plaintiffs' claim as arising under § 392.301(a)(8) and argue that this claim fails because Plaintiffs have not alleged any facts showing "why Defendants were prohibited by law from foreclosing and selling the Property, [or] how [they] used threats or coercion."  (*Id.*)  They also contend they are not debt collectors under the Act because their interaction with Plaintiffs involved only "Plaintiffs' attempt to obtain a new loan agreement and did not relate in any way to the collection of an existing debt."  (*Id.* at 8.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *report and*

---

[4]  Plaintiffs incorrectly identify this section as § 392.301(8).  (doc. 1-3 at 7.)

*recommendation adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  Subsection 392.301(a)(8)

provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce

that employ ... threatening to take an action prohibited by law."   Tex. Fin. Code Ann. §

392.301(a)(8) (West 2006).  The Act defines "debt collector," in relevant part, as "a person who

directly or indirectly engages in debt collection." *Id.* § 392.001(6).  "Debt collection" is defined as

"an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are

due or alleged to be due a creditor." *Id.* § 392.001(5).  Debt collection can include "actions taken

in foreclosing real property." *Sanghera v. Wells Fargo Bank*, *N.A.*, No. 3:10-CV-2414-B, 2012 WL

555155, at *7 (N.D. Tex. Feb. 21, 2012) (citation omitted); *Swim*, 2012 WL 170758, at * 5.[5]

Plaintiffs allege that "Defendant Deutsche" did not "timely or sufficiently" notify them of

its intent to foreclose, and even if it had, it had no justification to foreclose because their mortgage

would not be "in arrears" if all improper charges were credited and JMPC "was ordered to pay the

losses" they suffered as a result of the Employee's failure to help them.  (doc. 1-3 at 8.)  Even

assuming for purposes of this motion that Deutsche Bank failed to send a proper foreclosure notice,

Plaintiffs' allegations do not plausibly entitle them to relief because they do not identify specific

statements or conduct on the part of Defendants that qualify as "threatening to take an action

prohibited by law." *See Lo Voc v. JP Morgan Chase Bank, NA*, No. 3:12-CV-1342-M, 2012 WL

---

[5] During debt collection, § 392.303(a) prohibits a debt collector from using "unfair or unconscionable
means that employ [certain prohibited] practices."  Tex. Fin. Code Ann. § 392.303(a) (West 2005). Section
392.304(a) prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that employs
[certain prohibited] practices."  Tex. Fin. Code § 392.304(a) (West 2004).  Here, Plaintiffs conclusorily state that
they "would show that the acts, practices and/or omissions complained of were the producing cause" of their
damages, but they do not point to any sub-section of §§ 392.303(a) and 392.304(a) listing a particular prohibited
practice.  (*See* doc. 1-3 at 7.)  Moreover, their minimal discussion of the facts do not give rise to a reasonable
inference that Defendants engaged in any unfair or unconscionable practice or made any fraudulent, deceptive, or
misleading representation.  Accordingly, they fail to state a claim under §§ 392.304(a) and 392.303(a).

6772061, at \*4 (N.D. Tex. Dec. 5, 2012), *report and recommendation adopted*, 2013 WL 67128 (N.D. Tex. Jan. 7, 2013) (holding that the plaintiffs failed to state a claim under § 392.301(a)(8) based on the defendants' alleged failure to provide the requisite foreclosure notices because they did not identify specific actions or statements by part of the defendants that qualified as a threat); *Willeford v. Wells Fargo Bank, N.A.*, 3:12-CV-0448-B, 2012 WL 2864499, at \*6 (N.D. Tex. July 12, 2012) (same).

Moreover, while they allege that the foreclosure was unjustified, they fail to state they were current on their mortgage payments, and they admit that as of October 2010, they "could not continue to pay their mortgage." (doc. 1-3 at 2–3.)  They therefore fail to plead facts showing that the foreclosure was an action prohibited by law. *See Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2012 WL 5987590, at \*3 (N.D. Tex. Nov. 30, 2012) (holding that "foreclosure or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage"); *Burr v. JPMorgan Chase Bank*, N.A., No.4:11–CV–03519, 2012 WL 1059043, at \*7 (S.D. Tex. March 28, 2012) (holding that the plaintiffs failed to state a claim under § 392.301(a)(8) because the "foreclosure on [their] home after [they] admittedly defaulted on their mortgage loan [was] not an action prohibited by law").  Lastly, their allegations that their mortgage was "in arrears" due to improper charges and "losses" caused by JPMC are generalized, conclusory, and unsupported by facts.  Accordingly, Plaintiffs' claim for violation of the TDCPA should be dismissed for failure to state a claim.[6]

---

[6]   Plaintiffs asserted their TDCPA claim under the "tie-in" section of the DTPA.  (*See* doc. 1-3 at 7.)  The DTPA tie-in statute grants a private right of action under the DTPA to a claimant seeking to recover under the TDCPA. *Miller v. BAC Home Loans Servicing, LP*, No. 6:11CV22, 2012 WL 1206510, at \*5 (E.D. Tex. Mar. 23, 2012) (citing to Tex. Bus. & Com. Code § 17.50(h) & Tex. Fin. Code § 392.404), *report and recommendation adopted*, 2012 WL 1205797 (E.D. Tex. Apr. 11, 2012).  To prevail, "[the] claimant must show that he is a 'consumer' as defined in the DTPA." *Id.* (citations omitted).  As discussed, Plaintiffs have not pled their consumer

D.       **Equity in Property**

Defendants move to dismiss Plaintiffs' claim for "equity in property," arguing that it is not a cognizable claim. (doc. 5 at 8.)  They further contend that to the extent that Plaintiffs purport to bring a claim for unjust enrichment, the claim fails because unjust enrichment is not an independent cause of action but only a theory of recovery, and Plaintiffs cannot recover under this theory since "a valid, express contract cover[s] the subject matter of this dispute." (*Id.*)

Plaintiffs allege that Defendants wrongfully foreclosed on the Property, and that "approximately $70,000 of equity [will be] permanently lost to [them]" if the wrongful foreclosure is not reversed.[7] (doc. 1-3 at 8.)  Because Texas law does not recognize a cause of action for "equity in property," Plaintiffs' allegations could be characterized as a claim for unjust enrichment.

Although Defendants are correct that some Texas appellate courts do not recognize unjust enrichment as an independent cause of action, other courts, including the Texas Supreme Court and the Fifth Circuit, have recognized such claims. *See e.g.*, *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Unjust enrichment is an independent cause of action.") (citation omitted).  A plaintiff may recover for unjust enrichment if the defendant "has obtained a benefit from [him] by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832

status under the DTPA.  Their "tie-in" claim therefore also fails. *See id.*

[7]    A plaintiff's "equity" in the foreclosed property is the measure of damages in a wrongful foreclosure claim. *See Medrano v. BAC Home Loans Servicing, LP*, No. 3:10-CV-02565-M BF, 2012 WL 4174890, at *3 (N.D. Tex. Aug. 10, 2012), *report and recommendation adopted*, 2012 WL 4202700 (N.D. Tex. Sept. 19, 2012) ("In a wrongful foreclosure suit the measure of damages is the difference between the value of the property in question at the date of the foreclosure and the remaining balance due on the indebtedness.") (citation omitted).  To the extent that Plaintiffs seek to recover their purported equity in the Property in connection to their wrongful foreclosure claim, their claim fails because they have failed to state a valid claim for wrongful foreclosure.

11

S.W.2d 39, 41 (Tex. 1992).

Nevertheless,"there can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute." *Patterson v. Long Beach Mortg. Co.*, No. CIV.A.3:07CV1602OBH, 2009 WL 4884151, at *8 (N.D. Tex. Dec. 15, 2009) (citations omitted).  Defendants point out the presence of such a contract in this case—the mortgage that Plaintiffs admit they obtained to purchase the Property.  (doc. 5 at 8–9); (doc 1-3 at 2–3.)  Because an express contract governs the subject matter in this case, any claim for unjust enrichment against Defendants fails and should be dismissed.  *See Bircher v. Bank of New York Mellon*, 4:12-CV-171-Y, 2012 WL 3245991, at *6 (N.D. Tex. Aug. 9, 2012) (dismissing claim for unjust enrichment because "[t]he deed of trust and note preclude[ed]" such claim against the defendants).

## E.    Attorney's Fees

Defendants move to dismiss Plaintiffs' request for attorney's fees "for breach of contract" on the grounds that they have failed to plead a breach of contract claim.  (doc. 5 at 9.)

The essential elements of a breach of contract claim in Texas are:  "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Hurd*, 2012 WL 1106932, at *8 (N.D. Tex. Mar. 29, 2012) (citations omitted).

Plaintiffs allege they "are entitled to reasonable attorney fees ... for breach of contract." (doc. 1-3 at 10.)  However, they fail to assert a breach of contract cause of action, and apart from their allegation that Defendants breached the implicit agreement made by the Employee to help them save their home from foreclosure, they fail to allege facts giving rise to a reasonable inference that

12

they might recover under such claim.  Without more, Plaintiffs fail to meet the pleading standards under *Twombly*, and their claim for attorney's fees should therefore be dismissed.

## F.  Injunctive Relief

Lastly, Defendants move to dismiss Plaintiffs' request for injunctive relief arguing that the claim cannot survive without a viable cause of action.  (doc. 5 at 9.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Because dismissal of Plaintiffs' claims is warranted on the merits, they cannot establish any likelihood of success on the merits.  *See id.*  Accordingly, their request for injunctive relief should be dismissed.

## III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.)(citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  However, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.  *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327

days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his

or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, despite being represented by counsel, Plaintiffs failed to respond to the motion to

dismiss after being specifically invited to do so by the Court (*see* doc. 7), and they have had ample

opportunity to move for leave to amend their complaint because the motion to dismiss was filed on

July 13, 2012.  It also appears that Plaintiffs have alleged their best case.  Their claims should

therefore be dismissed with prejudice.

## IV.  RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED.**

**SO RECOMMENDED** on this 16th day of January, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE